IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| AUDIO POD IP, LLC, | |
| Plaintiff, | |
| v. | Case No. 2:24-cv-00185-AWA-LRL |
| AMAZON.COM, INC., AMAZON.COM LLC, AMAZON WEB SERVICES, INC., and AUDIBLE, INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
UNDER RULE 12(b)(6) OR TRANSFER UNDER RULE 12(b)(3) AND 28 U.S.C. § 1406**

**TABLE OF CONTENTS**

INTRODUCTION ------------------------------------------------------------------------------- 1

BACKGROUND --------------------------------------------------------------------------------- 2

     A.     The 2006 Disclosure --------------------------------------------------------------- 2

     B.     The 2011 Disclosure --------------------------------------------------------------- 4

ARGUMENT-------------------------------------------------------------------------------------- 5

I.     THE ASSERTED PATENTS ARE INVALID UNDER SECTION 101 -------------- 5

     A.     *Alice* Governs Patent Eligibility for Computer-Based Inventions -------------- 5

           1.     *Alice* Step One ----------------------------------------------------------- 5

           2.     *Alice* Step Two----------------------------------------------------------- 7

     B.     All Asserted Claims Are Directed to Abstract Ideas for Collecting, Analyzing, and Presenting Information --------------------------------------------- 8

           1.     The '740 Patent: Picking Up Where a Person Left Off, In Content With Multiple Parts -------------------------------------------- 8

           2.     The '922 Patent: Picking Up Where a Person Left Off, On a Different Device ------------------------------------------------------ 11

           3.     The '266 Patent: Synchronizing Multi-Part Content -------------------- 12

           4.     The '720 Patent: Synchronizing Multi-Part Content Derived from a "Written Work"----------------------------------------- 14

           5.     The '111 Patent: Synchronizing Audio and Images --------------------- 14

     C.     The Non-Asserted Claims Are Not Materially Different. ----------------------- 15

II.     THE COURT SHOULD DISMISS ALL CLAIMS AGAINST THE NON-AUDIBLE DEFENDANTS AND TRANSFER THE CASE TO NEW JERSEY ----------------------------------------------------------------------- 16

     A.     The Court Should Dismiss the Claims Against the Non-Audible Defendants------------------------------------------------------------------------ 16

           1.     Plaintiff's Factual Allegations Pertain Solely to Audible-------------- 16

           2.     The Complaint Relies on Improper Group Pleading to Ensnare the Non-Audible Defendants ------------------------------------- 16

3.      No Factual Basis Exists for Treating The Four Corporate
        Defendants As One ------------------------------------------------------------ 18

B.      The Court Should Transfer This Case to the District of New
        Jersey Because Venue Is Improper Here ------------------------------------ 19

        1.      Legal Standards -------------------------------------------------------- 19

        2.      Venue is Improper in this District ----------------------------------- 20

        3.      The Court Should Transfer the Case to the District of New
                Jersey ----------------------------------------------------------------- 21

CONCLUSION ----------------------------------------------------------------------------------- 21

## TABLE OF AUTHORITIES

*Cases:*                                                                                            *Page(s):*

*Adaptive Streaming Inc. v. Netflix, Inc.*,
    836 F. App'x 900 (Fed. Cir. 2020) ------------------------------------------------------------ 12

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016) ----------------------------------------------------- 7, 10, 15

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016) ------------------------------------------------------------- 6

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
    97 F.4th 1371 (Fed. Cir. 2024) ------------------------------------------------------------- 10

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ------------------------------------------------------------------ *passim*

*Amazon.com, Inc. v. WDC Holdings LLC*,
    No. 1:20-cv-484, ECF No. 1 (E.D. Va. Apr. 27, 2020)----------------------------------- 20

*Automated Transaction LLC v. New York Cmty. Bank*,
    No. 12-CV-3070 JS ARL, 2013 WL 992423 (E.D.N.Y. Mar. 13, 2013) -------------- 17, 18

*Ball v. Takeda Pharms Am., Inc.*,
    963 F. Supp. 2d 497 (E.D. Va. 2013) ------------------------------------------------------ 18

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016) ------------------------------------------------------------- 8

*Best Medical Int'l, Inc. v. Accuray, Inc.*,
    No. 10-cv-1043, 2011 WL 860423 (W.D. Pa. Mar. 9, 2011)--------------------------------- 17

*BlackBerry Ltd. v. Nokia Corp.*,
    No. 17-CV-155-RGA, 2018 WL 1401330 (D. Del. Mar. 20, 2018)-------------------- 17, 18

*Bluebonnet Internet Media Servs., LLC v. Pandora Media, LLC*,
    No. 2022-2215, 2024 WL 1338940 (Fed. Cir. Mar. 29, 2024) ------------------------------- 6

*Boston Sci. Corp. v. Cook Grp. Inc.*,
    269 F. Supp. 3d 229 (D. Del. 2017) ------------------------------------------------------- 19

*Celsion Corp. v. Stearns Mgmt. Corp.*,
    No. CIV. CCB 00-1214, 2001 WL 55456 (D. Md. Jan. 18, 2001)---------------------------21

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) ------------------------------------------------------------- 7

*In re Cray Inc.*,
    871 F.3d 1355 (Fed. Cir. 2017) ------------------------------------------------------------ 19

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ---------------------------------------------------------- *passim*

*Enco Sys., Inc. v. DaVincia, LLC*,
    845 F. App'x 953 (Fed. Cir. 2021) ------------------------------------------------------------ 14

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) --------------------------------------------------------------- 6

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016) ------------------------------------------------------------- 10

*Free Stream Media Corp. v. Alphonso Inc.*,
    996 F.3d 1355 (Fed. Cir. 2021) ------------------------------------------------------------- 12

*Free Stream Media Corp. v. Alphonso Inc.*,
    No. 2019-1506, 2021 WL 1880931 (Fed. Cir. May 11, 2021) ------------------------------- 6

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
    60 F.4th 1349 (Fed. Cir. 2023) ------------------------------------------------------------ 6, 15

*Intellectual Ventures I LLC v. Cap. One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015) --------------------------------------------------------- 7, 8

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) --------------------------------------------------------------- 7

*M2M Sols. LLC v. Telit Commc'ns PLC*,
    No. CV 14-1103-RGA, 2015 WL 4640400 (D. Del. Aug. 5, 2015) ------------------------- 18

*Maglula, LTD. v. Amazon.com, Inc.*,
    No. 1:19-CV-1570, 2020 WL 9536937 (E.D. Va. Apr. 9, 2020) --------------------------- 20

*Manville Sales Corp. v. Paramount Sys., Inc.*,
    917 F.2d 544 (Fed. Cir. 1990) ------------------------------------------------------------- 18

*Mod. Font Applications, LLC v. Peak Rest. Partners, LLC*,
    No. 2:19-CV-221 TS, 2019 WL 3781051 (D. Utah Aug. 12, 2019) ------------------------ 17

*Parker v. Flook*, 4
    37 U.S. 584 (1978) ------------------------------------------------------------------------- 8

*People.ai, Inc. v. Clari Inc.*,
    No. 2022-1364, 2023 WL 2820794 (Fed. Cir. Apr. 7, 2023) --------------------------------- 7

*PersonalWeb Techs. LLC v. Google LLC*,
    8 F.4th 1310 (Fed. Cir. 2021)------------------------------------------------------------ 13

*PLS-Pac. Laser Sys. v. TLZ Inc.*,
    No. 06-CV-4585 RMW, 2007 WL 2022020 (N.D. Cal. July 9, 2007)---------------------- 17

*Promos Techs., Inc. v. Samsung Elecs. Co.*,
    No. CV 18-307-RGA, 2018 WL 5630585 (D. Del. Oct. 31, 2018)--------------------------- 17

*RecogniCorp, LLC v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017) ------------------------------------------------------------- 7

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ------------------------------------------------------5, 6, 15

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
    801 F.3d 412 (4th Cir. 2015) -------------------------------------------------------------- 17

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017)-------------------------------------------------------------- 5

*Springboards to Educ., Inc. v. Kipp Found.*,
    No. 3:16-CV-2436-G, 2017 WL 3917701 (N.D. Tex. Sept. 7, 2017) ----------------------- 17

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016) ------------------------------------------------------------- 7

*Taylor v. IBM*,
    54 Fed. App'x 794 (5th Cir. 2002) --------------------------------------------------------- 17

*TC Heartland v. Kraft Foods Group Brands LLC*,
    137 S. Ct. 1514 (2017) ------------------------------------------------------------------- 19

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016)-------------------------------------------------------------- 6

*Trex Co. LLC v. Canton Lumber Co.*,
    No. CIV.A. 5:01CV00009, 2001 WL 543227 (W.D. Va. May 16, 2001) ------------------ 21

*Trinity Info Media, LLC v. Covalent, Inc.*,
    72 F.4th 1355 (Fed. Cir. 2023)---------------------------------------------------------5, 11

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ----------------------------------------------------------- 5, 6

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014)-------------------------------------------------------------- 6

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ------------------------------------------------------------------- 18

*Universal Secure Registry LLC v. Apple Inc.*,
    10 F.4th 1342 (Fed. Cir. 2021) ---------------------------------------------------- 12

*Via Vadis, LLC v. Skype, Inc*.,
    No. 11-cv-507, 2012 WL 2789733 (D. Del. July 6, 2012) ---------------------------- 17

*In re ZTE (USA) Inc.*,
    890 F.3d 1008 (Fed. Cir. 2018) ---------------------------------------------------- 19

*Statutes and Rules*

    28 U.S.C. § 1391(c) ---------------------------------------------------------------- 19

    28 U.S.C. § 1400(b) ---------------------------------------------------------------- 19, 21

    28 U.S.C. § 1406(a) ---------------------------------------------------------------- 19, 21

    35 U.S.C. § 101 --------------------------------------------------------------- *passim*

    Fed.R.Civ.P. 8(a) ------------------------------------------------------------------- 17

    Fed. R. Civ. P. 12(b)(3) ------------------------------------------------------------- 19

    Rule 12(b)(6) --------------------------------------------------------------- 5, 15, 17

## INTRODUCTION

The five asserted patents in this case claim ideas for delivering and presenting digital media content, including electronic books and audiobooks.  Although the patents describe the claimed ideas in the context of computers, people were using the same ideas long before computers existed.  For example, the first asserted patent claim recites a digital "bookmark," which saves the place where a person left off (e.g., in an audiobook or other media) and allows the person to resume playback from the same place.  Picking up where one left off is an ancient practice that was commonplace long before digital media.  The asserted patent claim merely recites this common practice in the context of a computer network, using routine and conventional computer activities— e.g., determining whether an audio file is present on a computer, downloading the file, and playing it.  Such claims are invalid under *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014).

*Alice* held that computer-implemented patent claims are invalid under 35 U.S.C. § 101 when they implement a familiar pre-computer practice using only routine and conventional computer functions.  If the same practice can be used both with and without computers, it is likely an unpatentable "abstract idea" rather than a patentable improvement to computer technology.  Applying *Alice*, the Federal Circuit has held that hundreds of patent claims focused on delivering or presenting digital media content were directed to abstract ideas and thus invalid under § 101.

Invalidity under § 101 is a question of law that is properly addressed in a motion to dismiss. The Federal Circuit routinely affirms such dismissals because complaints that assert facially invalid patent claims fail to state a claim on which relief may be granted.  Here, all claims of the asserted patents are invalid under § 101, so the Court should dismiss the complaint.

If the Court does not hold all patents invalid, then it should dismiss the claims against three defendants and transfer the case against Audible, Inc. to New Jersey because venue is improper.

## BACKGROUND

Plaintiff alleges that the Defendants infringe five U.S. Patents ("the asserted patents").[1] All five asserted patents descend from the same 2006 patent application.  Three of the five patents are "continuations" of the 2006 application, meaning that they share essentially the same disclosure as that application.  (*See* Dkt. No. 13-3 at 1; Dkt. No. 13-1 at 1-2; Dkt. No. 13-4 at 1-2 ("Continuation of application … filed … on Dec. 12, 2006").)   The other two patents are "continuations-in-part," meaning that they expand upon the 2006 disclosure with additional material.  (Dkt. No. 13-2 at 1; Dkt. No. 13-5 at 1-2 ("Continuation-in-part of application … filed … Dec. 12, 2006").) Both continuations-in-part share essentially the same expanded disclosure, which was first submitted to the Patent Office in 2011.  (*Id.*)

### A.     The 2006 Disclosure

The asserted patents that share the 2006 disclosure are the '740 patent, the '922 patent, and the '266 patent (collectively, "the continuation patents").  (Dkt. Nos. 13-1, 13-3, 13-4.)  The citations below reference the '740 patent, but the cited information appears in all three continuation patents.

The continuation patents describe "two different approaches" that were traditionally used for "delivering digital audio data."  (Dkt. No. 13-1 at 1:23-24.)  The first approach was to download an entire audio file.  (*Id.* at 1:24-31, 1:41-44.)  The second approach was to use "streaming technology" that allowed the audio to be played without waiting for all of it to download.  (*Id.* at 1:32-40.)  The download approach was common with shorter works, such as songs.  (*Id.* at 1:41-44.) The streaming approach benefitted longer works, such as audiobooks and radio shows, because it

---

[1] The asserted patents are U.S. Patent Nos. 8,738,740 ("the '740 patent"), 9,954,922 ("the '922 patent"), 10,091,266 ("the '266 patent"), 9,319,720 ("the '720 patent"), and 10,805,111 ("the '111 patent").

"obviate[d] the waiting associated with mass download," which could take an unacceptably long time for such works.  (*Id.* at 1:49-61.)  But streaming was susceptible to delays and interruptions when content could not be delivered fast enough.  (*Id.* at 1:57-2:2.)

The patents recognize that longer works were sometimes delivered using the download approach, and in that situation they were split into smaller files.  (*Id.* at 2:15-19.)  For example, when an audiobook of "The Godfather" was released, it was divided into "24 [audio] files" because it was "almost 9 hours" long.  (*Id.*)  However, relying on numerous smaller files was a hassle because "the user must manually keep track of which file is currently being listened to and where one is in that particular file."  (*Id.* at 2:19-22.)  Keeping track of one's position would become more difficult "if the [user's] audio player automatically changes files, if the user is listening to multiple audio streams and/or if the user listens to audio streams on more than one [audio player]."  (*Id.* at 2:23-27.)  Also, it could be "particularly difficult and time consuming for the user to resume listening to an audio stream at a specific position."  (*Id.* at 2:27-29.)  The patent refers to the foregoing difficulties as "[t]racking problems."  (*Id.* at 2:23-29.)

The patents propose to address these problems by having a computer keep track of information instead of requiring the user to do so manually.  The user does not need to keep track of individual audio files that are part of a larger work because the computer is tasked with loading and playing them in the correct order.  (*Id.* at 2:36-39.)  Additionally, the computer stores "a record of the position of each small digital audio file in the audio stream, to increase tracking options" available to the user.  (*Id.* at 2:48-52.)  For example, the user may choose to fast forward, rewind, or skip to a bookmarked location.  (*Id.* at 2:52-57, 8:12-26.)  The computer uses the stored records to determine which small audio file to play when the user selects one of these options.  (*Id.*)

The computer stores the records as part of a "virtual audio stream descriptor," which is

simply a set of information related to the audio stream.  (*Id.* at 2:48-52.)  "In addition to providing actual stream details (i.e., the information for locating and managing the plurality of small digital audio files), the virtual audio stream descriptor [may include] descriptive details … such as the title and/or ISBN [of an audiobook]."  (*Id.* at 5:36-40.)  The descriptor may further include references to illustrations, advertisements, and other content associated with the audio.  (*Id.* at 5:41-52, 6:35-46.)

### B.    The 2011 Disclosure

The asserted patents that share the 2011 disclosure are the '720 patent and the '111 patent (collectively, "the CIP patents").  (Dkt. Nos. 13-2, 13-5).  In addition to the tracking problems identified in the 2006 disclosure, the CIP patents assert that other "tracking problems will develop during cross media switching (e.g. between audio and text)."  (Dkt. No. 13-2 at 2:18-43.)  For example, users who switch from listening to an audiobook in a car to reading the text of the same book at home might have trouble finding the spot where they left off because they could not easily cross-reference their position in the audiobook with the corresponding location in the text.  (*Id.* at 2:34-39.)

The CIP patents propose to address these problems by storing information about various related media files "in terms of time relative to a timeline of a complete audio recording."  (*Id.* at 3:6-11.)  Using the audio recording as a common baseline, one can cross-reference (and thereby navigate between) media files that correspond to each other, which "allow[s] cross media switching in a seamless manner."  (*Id.* at 3:11-13.)  For example, a user can bookmark a position in an audiobook and pick up from the corresponding position in the text of the same book.  (*Id.* at 23:16-28.)  Alternatively, the text and audio can be presented together using the common timeline to synchronize them, "thus producing a read-along effect."  (*Id.* at 29:58-63.)

## ARGUMENT

### I.  THE ASSERTED PATENTS ARE INVALID UNDER SECTION 101.

#### A.  *Alice* Governs Patent Eligibility for Computer-Based Inventions.

Section 101 of the Patent Act describes the subject matter eligible for patent protection, and "contains an important implicit exception" that prohibits patenting "abstract ideas." *Alice*, 573 U.S. at 216.  The Supreme Court's two-step *Alice* framework governs whether computer-based patent claims are impermissibly abstract under § 101.  *Id.* at 217-227.  Because patent eligibility is a "question of law," it is often resolved "at the motion to dismiss stage based on intrinsic evidence" from the patent itself.  *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017); *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion").

##### 1.  *Alice* Step One

At *Alice* step one, the Court determines whether the claims are directed to an abstract idea despite their computer features.  573 U.S. at 217-18.  To determine whether a claim is "directed to" such an idea, courts look at "the focus of the claimed advance over the prior art."  *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361 (Fed. Cir. 2023).

A claim is abstract if it focuses on merely collecting, analyzing, and presenting information.  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016).  These information-based activities are abstract because "[i]nformation as such is an intangible."  *SAP*, 898 F.3d at 1167.  Our patent laws protect new *technology*—not new ways of thinking about intangible information.

Because many media-streaming patents focus on the information involved in streaming rather than the technology used to process it, the Federal Circuit routinely finds that streaming patents are directed to abstract ideas.  For example, in *Two-Way Media Ltd. v. Comcast Cable*

*Commc'ns, LLC*, 874 F.3d 1329, 1333 (Fed. Cir. 2017), the Federal Circuit invalidated four patents that generally related to "streaming audio/visual data over a communications system like the internet." The method recited in the patent claims there merely "manipulate[d] data," and did so using "only conventional computer components." *Id.* at 1338. Similarly, the Federal Circuit invalidated patent claims that focused on "receiving, displaying, converting, storing, and transmitting digital video" over a computer network in *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357 (Fed. Cir. 2023). Additional examples are plentiful.[2]

The Federal Circuit has distinguished information-based ideas from computer-specific technological improvements. *SAP*, 898 F.3d at 1168 (citing *Elec. Power*, 830 F.3d at 1354). Ideas that merely propose new "uses to which existing computer capabilities could be put" are abstract, but improvements "in how computers could carry out one of their basic functions" are not. *Elec. Power*, 830 F.3d at 1354. Thus, the Federal Circuit has found claims non-abstract where they recited, for example, "a specific type of data structure designed to improve the way a computer stores and retrieves data in memory." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). Conversely, it has held claims abstract where they recited a computer but were "not directed to a solution to a 'technological problem.'" *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016).

The Federal Circuit routinely holds that patents lack any technological improvement when

---

[2] *E.g.*, *Bluebonnet Internet Media Servs., LLC v. Pandora Media, LLC*, No. 2022-2215, 2024 WL 1338940, at *1 (Fed. Cir. Mar. 29, 2024) (invalidating claims to "a playback interface" for "media resources delivered over the Internet"); *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1256 (Fed. Cir. 2016) (invalidating claims to a system for receiving "network-based content from the broadcaster via a streaming signal"); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 712 (Fed. Cir. 2014) (invalidating claims related to "distributing copyrighted media products over the Internet"); *Free Stream Media Corp. v. Alphonso Inc.*, No. 2019-1506, 2021 WL 1880931 (Fed. Cir. May 11, 2021).

their claims are analogous to activities that people performed before the advent of modern computers. For example, the Federal Circuit has held that claims related to media streaming were abstract by analogy to "dial-a-joke" services, "which were available long before the invention of … the Internet." *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1270 (Fed. Cir. 2016) ("*Affinity/Amazon*"). And the case law is replete with additional examples. *E.g.*, *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (holding check-processing claims abstract because "humans have always performed these functions"); *Intellectual Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) (analogizing customized web pages to location-specific "newspaper inserts"); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016) (holding email filtering claims abstract by analogy to practices of "people receiving paper mail"); *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (holding data-encoding claims abstract by analogy to "Paul Revere's 'one if by land, two if by sea' signaling system"); *People.ai, Inc. v. Clari Inc.*, No. 2022-1364, 2023 WL 2820794, at *8 (Fed. Cir. Apr. 7, 2023) (invalidating claims where analogy showed they were "directed to automation of a long prevalent manual process").

## 2.   *Alice* Step Two

Once a court has concluded that claims are directed to an abstract idea, it must then consider "what else" is recited in the claims. *Alice*, 573 U.S. at 217. The elements of each claim are considered "both individually and 'as an ordered combination' to determine whether the additional elements" beyond the abstract idea provide an "inventive concept." *Id.* at 217-18. An inventive concept is an element or combination of elements that "transform the nature of the claim" and ensure that the patent "amounts to significantly more" than just the abstract idea. *Id.* Importantly, any inventive concept must be recited in the claim itself. S*ynopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016). Features described in the specification but absent from the

claims are irrelevant to the § 101 analysis. *Id.*

Claim limitations that implement an abstract idea using merely "generic computer components" or "well-understood, routine, conventional activities" are not inventive. *Alice,* 134 S. Ct. at 2357-60. Nor are limitations that merely confine the claims to a "particular field of use or technological environment." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015). Rather, claims contain an inventive concept when they recite a technology-specific solution to a technology-specific problem. *See Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1351 (Fed. Cir. 2016) (claims reciting "a technology-based solution … to filter content on the Internet that overcomes existing problems with other Internet filtering systems" were inventive).

*Alice*'s second step is designed to ensure that patent-eligibility does not "depend simply on the draftsman's art." *Alice*, 573 U.S. at 224 (quoting *Parker v. Flook*, 437 U.S. 584, 593 (1978)). Allowing patentees to own an abstract idea merely by drafting claims to describe the idea in connection with generic computer functionality would "eviscerat[e] the rule that [l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Id.* (internal quotation marks omitted).

### B. All Asserted Claims Are Directed to Abstract Ideas for Collecting, Analyzing, and Presenting Information.

#### 1. The '740 Patent: Picking Up Where a Person Left Off, In Content With Multiple Parts.

Audio Pod asserts claim 12 of the '740 patent. (Dkt. No. 13 at ¶ 76.) This claim requires storing a "bookmark" that identifies a point in time within an audio recording, and later playing the audio from that bookmarked point. (Dkt. No. 13-1 ('740 patent) at 18:24-56.) In other words, the claim is directed to picking up an audio stream where a person left off. Because the audio is stored in multiple files, the claim also requires determining which file includes the bookmarked point and downloading that file if needed. (*Id.*) The claim is reproduced below:

12. A non-transitory computer readable storage medium including computer readable code, which when executed by a computer, causes said computer to:

determine a first position within an audio stream playing on a media player;

determine a time offset using a point in time of the first position from a beginning of the audio stream;

*create a bookmark for the first position*, the bookmark including a file, the file including a unique identifier for identifying the audio stream and including the time offset,

wherein the bookmark is for positioning the audio stream to the first position using the time offset,

wherein the audio stream is stored as a plurality of digital audio files in a library, each digital audio file including a different segment of the audio stream, and wherein the computer code is further configured to cause said computer to:

*determine a first digital audio file from the plurality of digital audio files to be loaded for playback with the media player from the first position*, the first digital audio file selected using the time offset and a descriptor file, the descriptor file for ordering the plurality of digital audio files and including at least one of a start time, an end time, and a play time of each digital audio file in the plurality of digital audio files within the audio stream;

determine if the first digital audio file is resident within the computer;

download the first digital audio file from the library in dependence upon whether the first digital audio file is already resident within the computer; and

*load the first digital audio file for playback with the media player from the first position*.

(*Id*.)  The claimed steps are not unique to computers.  Throughout history, humans have known how to take note of where they left off and pick up later from the same point.  Humans have done this routinely even in lengthy works that are divided into smaller portions and stored in a library.

For example, legal treatises often span multiple volumes.  A lawyer reading a treatise may take a note identifying a section of interest.  If the lawyer later wants to return to that section, she can consult the table of contents—analogous to the "descriptor" claimed here—to determine which volume contains the noted section.  The lawyer can then take that volume down from the bookshelf

and turn to the noted section.  The patent claim simply replaces the multi-volume treatise in this example with multi-part digital audio.  Thus, it is directed to an abstract idea at *Alice* step one.  *See FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1095 (Fed. Cir. 2016) (analogizing to information that "humans in analogous situations" have considered "for decades, if not centuries").

Audio Pod's complaint alleges that the '740 patent somehow solves a technical problem because it segments audio content into a set of smaller files that are played back in order.  (Dkt. No. 13 at ¶¶ 37-39.)  But segmenting content and presenting it in order does not make the content any less abstract.  For example, the claims in *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1375-76 (Fed. Cir. 2024), recited a "visualization dataset" that was divided into "frames," which were transmitted from a server to a remote device and displayed "sequentially" to a user. Like the files in the '740 patent, the frames in *AI Vizualize* were delivered over the network only if they were not "already stored locally on a user's device."  *Id.*  The Federal Circuit invalidated those claims because they were focused on merely "obtaining, manipulating, and displaying data," which are "abstract concepts."  *Id.* at 1378.  The claim here is no different.

Turning to *Alice* step two, claim 12 of the '740 patent recites nothing inventive.  Apart from its abstract information-based steps, the claim recites only a generic "media player" that downloads digital files from a library. (Dkt. No. 13-1 ('740 patent) at 18:24-56.)  The patent admits that downloading audio files to a "media player" was nothing new.  (*Id.* at 1:23-31.)  And libraries have existed for thousands of years, so merely reciting a library in a computer network is not inventive.  *Affinity/Amazon*, 838 F.3d at 1267 (invalidating claims that recited "a network based media managing system that maintains a *library of content*") (emphasis added).  Because claim 12 adds nothing inventive to the abstract idea, it is invalid under § 101.

### 2.     The '922 Patent: Picking Up Where a Person Left Off,
On a Different Device.

Audio Pod asserts claim 1 of the '922 patent.  (Dkt. No. 13 at ¶ 99.)  This claim, too, recites bookmarking a position in a media stream.  (Dkt. No. 13-3 ('922 patent) at 16:27-30.)  But the claim recites downloading two portions of the media stream instead of one.  (*Id.* at 16:18-21, 16:33-40.)  Both downloaded portions include the same bookmarked position.  (*Id.* at 16:18-40.)  These two downloaded portions are accessed on two different devices.  (*Id.* at 16:22-24, 16:43-45.)

People have long accessed portions of the same content in multiple places.  For example, a lawyer borrows a volume from her firm's library.  She reads the volume at a desk in her office.  She notes a page of interest by writing down the page number with a pencil.  She then asks her firm's librarian to photocopy the relevant chapter.  When she gets home, she reads the chapter at a different desk.  She has read two portions of the same content, both of which include the noted page, in two different places.  Claim 1 simply substitutes digital content for paper content.

Claim 1 includes additional steps that relate to managing storage.  (*Id.*  at 16:46-59.)  These steps include identifying a range of "content to be retained" and "narrowing the range of content" that is retained if insufficient storage is available.  This is analogous to the lawyer discarding unnecessary pages of a document that do not fit in her briefcase or desk drawer.  All of claim 1 is therefore analogous to steps that people routinely perform with information on paper.  Thus, it is abstract at *Alice* step one.  *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361–62 (Fed. Cir. 2023) ("A 'telltale sign of abstraction' is when the claimed functions are "mental processes that 'can be performed in the human mind' or 'using a pencil and paper.'").

Turning to *Alice* step 2, the '922 patent lacks an inventive concept for essentially the same reasons as the '740 patent.  (*See supra* p. 11.)  The '922 patent claim recites two client devices instead of one, but this difference is immaterial.  The patent admits that client devices individually

were nothing new.  (Dkt. No. 13-3 ('922 patent) at 1:30-45) (describing admittedly traditional uses

of client devices).)  And merely combining two admittedly conventional devices is not inventive.

*See Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1358 (Fed. Cir. 2021) (transmit-

ting information from "the first device to the second device" to perform a function "at two loca-

tions" was not inventive); *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1361-62

(Fed. Cir. 2021) (invalidating claims directed to matching content on a second device with infor-

mation from a first device); *see also Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900,

903 (Fed. Cir. 2020) (invalidating claims directed to collecting information and transcoding it for

"multiple devices").  Thus, claim 12 of the '922 patent is invalid under § 101.

### 3.    The '266 Patent: Synchronizing Multi-Part Content.

Audio Pod asserts claim 1 of the '266 patent.  (Dkt. No. 13 at ¶ 116.)  This claim requires

"primary digital content" and "secondary digital content" to be presented "simultaneously and in

synchronization" on two different devices.  (Dkt. No. 13-4 ('266 patent) at 16:43-51.)  Long before

computers, people were simultaneously presenting content on two devices, for example, when two

different musicians would play a song with versions for two different instruments.  Claim 1 of the

'266 patent merely recites this age-old idea using information in a computer network.  The idea is

abstract.  *Cf. Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) (claim

requiring "concurrent visualization" of multiple information types transmitted over a computer

network was invalid, "even if understood to require time-synchronized display").

The claim recites various types of information that facilitate the synchronized presentation.

Specifically, the claim requires an "identifier" for the primary content and "position" in that con-

tent.  (Dkt. No. 13-4 ('266 patent) at 16:32-36.)  The first device shares this information with the

second device.  (*Id.* at 16:37-39.)  This is analogous to one musician sending a note to let another

musician know that they will perform the third movement of Beethoven's Fifth Symphony

together.  The symphony name is an "identifier" and the numbered movement is a "position." Information that identifies content and positions within the content are not unique to computers.

The patent claim further requires that the "identifier" is used to obtain a "descriptor" of the content from a "library."  (*Id.* at 16:40-42.)  The "descriptor" contains a list of portions that make up the content.  (*Id.* at 5:1-6.)  Likewise, a musician gets a copy of sheet music for Beethoven's Fifth Symphony, with a table of contents, from a library.  The table of contents lists the various portions of the Symphony.  Again, obtaining such information is not unique to computer technology.  *See PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1316 (Fed. Cir. 2021) (using a "content-based identifier" to retrieve content from a "library" was an abstract idea that predates computers).

Finally, the patent claim recites "releasing storage resources" on the first and second device for portions of content that need not be retained.  (Dkt. 13-4 ('266 patent) at 16:52-64.)  Musicians do this when they discard pages of sheet music that they do not need.  If the two musicians are planning to perform only one portion of a symphony, they can discard pages of sheet music for the other portions to free up space on their music stands.  *See PersonalWeb*, 8 F.4th at 1316 (identifying content to "purge" or "discard" was an abstract idea long performed with paper books).  Claim 1 is therefore analogous to steps that people have performed for centuries with content written on paper.  The claim is directed to an abstract idea at *Alice* step one.  *Id.*

At *Alice* step two, the claim recites the same conventional computer components and functionality addressed above with respect to the '740 and '922 patents, none of which are inventive. *See Elec. Power*, 830 F.3d at 1355 ("Nothing in the claims … requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information.").  Thus, the claim is invalid under § 101.

- 13 -

### 4. The '720 Patent: Synchronizing Multi-Part Content Derived from a "Written Work."

Audio Pod asserts claim 1 of the '720 patent.  (Dkt. No. 13 at ¶ 90.)  This claim recites a "simultaneous synchronized rendering" of multiple media streams, as in the '266 patent, but also specifies that the streams are each "derived from [the] same originating written work."  (Dkt. No. 13-2 ('720 patent) at 40:24-37.)  For example, these streams could include the text of a book and an audio recording of the same book.  (*Id.* at 18:43-63.)  The '720 patent explains that presenting these streams together is analogous to a person reading a book aloud.  (*Id.* at 29:58-63.)

The Federal Circuit's decision in *Enco Sys., Inc. v. DaVincia, LLC*, 845 F. App'x 953, 957 (Fed. Cir. 2021), demonstrates that synchronizing text with other media is abstract.  The claims in that case focused on "converting audio to text and associating the text with corresponding video." *Id.*  The claims expressly required "*synchronizing* the [text] data with one or more cues in the AV signal."  *Id.* at 955 (emphasis added).  As *Enco* demonstrates, claim 1 of the '720 patent is directed to an abstract idea at *Alice* step one.

At step two, claim 1 lacks an inventive concept because it merely combines the abstract idea with conventional computer components.  All components were addressed above in connection with the other patents, except for a "server."  The patent admits that using servers in combination with "client" and "media player" devices was nothing new.  (Dkt. No. 13-2 ('720 patent) at 1:26-34.)  Thus, the '720 patent is invalid under § 101.

### 5. The '111 Patent: Synchronizing Audio and Images.

Audio Pod asserts claim 1 of the '111 patent.  (Dkt. No. 13 at ¶ 131.)  This claim also focuses on synchronizing media streams, but specifies that they must include "an image stream of static graphic images and a corresponding audio stream."  (Dkt. No. 13-5 ('111 patent) at 41:47-49.)  Merely limiting the claimed information to "particular content" (static images and audio)

does not make it any less abstract.  *SAP*, 898 F.3d at 1168.  Beyond the abstract idea, the claim recites only a "client device" and a "network accessible library."  (Dkt. No. 13-5 at 41:46-42:6.)  These elements are not inventive, individually or in combination.  *See Affinity/Amazon*, 838 F.3d at 1268-69 (invalidating claims that required streaming media content from a "library" to a "handheld device").  Thus, claim 1 of the '111 patent is invalid under § 101.

### C.    The Non-Asserted Claims Are Not Materially Different.

Audio Pod has identified only one asserted claim from each patent, but the complaint suggests that other claims may be asserted later.  (*E.g.*, Dkt. No. 13 at ¶ 76 (accusing Amazon of infringing "at least" the identified claim).)  Any assertion of other claims would be futile because *all* claims of the asserted patents are invalid under § 101 in view of the case law cited above.

The asserted claims analyzed above are representative of all claims in the asserted patents for purposes of § 101.  A court may treat patent claims as representative when "a patentee makes no 'meaningful argument for the distinctive significance of any claim limitations not found in the representative claim.'"  *Hawk Tech.*, 60 F.4th at 1353, n.1; *Elec. Power*, 830 F.3d at 1352.  Here, Audio Pod's complaint identifies only two purportedly significant limitations—namely, the "descriptor" limitation from claim 12 of the '740 patent and the "synchronizing" limitation from claim 1 of the '720 patent.  (Dkt. No. 13 at ¶¶ 40, 46.)  Both limitations appear in the asserted claims addressed above, so the court may treat the asserted claims as representative of all claims.

Because all of Audio Pod's claims are directed to abstract ideas for collecting, analyzing, and presenting information, using nothing more than conventional combinations of computing devices, they are invalid under § 101 as a matter of law.  Thus, the Court should dismiss this case under Rule 12(b)(6).  Such dismissal would moot the rest of this motion.

## II.    THE COURT SHOULD DISMISS ALL CLAIMS AGAINST THE NON-AUDIBLE DEFENDANTS AND TRANSFER THE CASE TO NEW JERSEY.

If the Court does not dismiss this case in its entirety on the basis that the asserted patents are invalid under § 101, then the Court should dismiss Plaintiff's claims against the non-Audible defendants and transfer the case to the District of New Jersey.

### A.    The Court Should Dismiss the Claims Against the Non-Audible Defendants.

#### 1.    Plaintiff's Factual Allegations Pertain Solely to Audible.

While the Complaint alleges that "Amazon" has made, used, offered to sell, offered to sell access to, sold, and/or sold access to a variety of products and services (Dkt. 13 ¶ 19), Audible's products are the only products that the Complaint alleges actually infringe any of the Patents-in-Suit.  (Dkt. 13 ¶¶ 19 (defining the accused products as "Audible and the Audible Library," as well as any products or services that use those products), 76 (defendants infringe because they allegedly "make, use, sell, sell access to, import, offer to sell and/or offer to sell access to Audible"), 77 (referring to the Audible Cloud Player),  92 (relying on Audible Captions), 100 (relying on Audible's audiobook library), 132 (relying on Audible Library).)  Indeed, the heading of each "Count" in the Complaint purports to show infringement of each asserted patent "by Audible."  (Dkt. 13 at 14 (Count I), 23 (Count II), 26 (Count III), 41 (Count IV), 48 (Count V).)  The Complaint includes no facts showing how the three other, non-Audible defendants (Amazon.com, Inc., Amazon.com LLC, or Amazon Web Services, Inc.) purportedly infringe.

#### 2.    The Complaint Relies on Improper Group Pleading to Ensnare the Non-Audible Defendants.

Plaintiff defines the four defendants collectively as "Defendants" or "Amazon" (Dkt. 13 at 1), but never specifies how *each defendant* infringes (*id.* ¶¶ 75-139).  Courts routinely reject such "group pleading" because it fails to provide notice to each defendant of what that defendant is

alleged to have done.  *See, e.g.*, *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412 (4th Cir. 2015) (finding the district court correctly dismissed defendants because the "complaint was vague, never explained its case, and lumped them together without sufficient detail") (internal quotations omitted); *Taylor v. IBM*, 54 Fed. App'x 794 (5th Cir. 2002) (affirming dismissal under Rule 12(b)(6) where "Appellants failed to allege specific acts of [copyright] infringement by each defendant, thereby failing to adhere to the requirements of Fed.R.Civ.P. 8(a)"); *Springboards to Educ., Inc. v. Kipp Found.*, No. 3:16-CV-2436-G, 2017 WL 3917701, at *4 (N.D. Tex. Sept. 7, 2017) ("In order to comply with Rule 8(a), it is necessary that [plaintiff] attribute specific acts of [trademark] infringement to each defendant."); *PLS-Pac. Laser Sys. v. TLZ Inc.*, No. 06-CV-4585 RMW, 2007 WL 2022020, at *11 (N.D. Cal. July 9, 2007); *Best Medical Int'l, Inc. v. Accuray, Inc.*, No. 10-cv-1043, 2011 WL 860423, at *6 (W.D. Pa. Mar. 9, 2011); *Via Vadis, LLC v. Skype, Inc.*, No. 11-cv-507, 2012 WL 2789733, at *1 (D. Del. July 6, 2012).

Here, Plaintiff's allegations are specific to Audible products only and mention no role or participation by other defendants.  Thus, the Court should dismiss the non-Audible defendants. *BlackBerry Ltd. v. Nokia Corp.*, No. 17-CV-155-RGA, 2018 WL 1401330, at *2 (D. Del. Mar. 20, 2018) (dismissing infringement claims against three of four grouped entities because allegations were specific to one defendant); *Mod. Font Applications, LLC v. Peak Rest. Partners, LLC*, No. 2:19-CV-221 TS, 2019 WL 3781051, at *3 (D. Utah Aug. 12, 2019) (dismissing infringement claims against one defendant where factual allegations were specific to a different defendant); *Promos Techs., Inc. v. Samsung Elecs. Co.*, No. CV 18-307-RGA, 2018 WL 5630585, at *3 (D. Del. Oct. 31, 2018) (dismissing infringement claims against all grouped defendants); *Automated Transaction LLC v. New York Cmty. Bank*, No. 12-CV-3070 JS ARL, 2013 WL 992423, at *4 (E.D.N.Y. Mar. 13, 2013) (dismissing infringement claims against both grouped defendants).

### 3.   No Factual Basis Exists for Treating The Four Corporate Defendants As One.

Plaintiff correctly alleges that each of Amazon.com LLC, AWS, and Audible is a subsidiary of defendant Amazon.com, Inc.  (Dkt. 13 ¶¶ 6, 10, 15.)  But the defendants' corporate relationship does not excuse Plaintiff's failure to sufficiently plead infringement against each defendant.  "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries."  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  A court "must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception."  *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 552 (Fed. Cir. 1990).

Here, Plaintiff alleges no facts, besides mere corporate ownership, to suggest that Amazon.com, Inc. should be liable for the actions of its subsidiary, Audible.  Thus, Plaintiff fails to state a claim against the parent corporation, Amazon.com, Inc.  *See BlackBerry*, 2018 WL 1401330, at *2 (dismissing patent infringement claims against parent company where a "complaint does not state facts supporting the existence of an agency relationship" and fails to state "facts that justify piercing the corporate veil"); *M2M Sols. LLC v. Telit Commc'ns PLC*, No. CV 14-1103-RGA, 2015 WL 4640400, at *3 (D. Del. Aug. 5, 2015) (similar); *Automated Transaction*, 2013 WL 992423, at *4 & n.6 (mere ownership and "opportunity to exercise control" are insufficient to plausibly plead that a parent corporation is liable for a subsidiary's alleged infringement); *Ball v. Takeda Pharms Am., Inc.*, 963 F. Supp. 2d 497, 502-03 (E.D. Va. 2013) (dismissing claims against related corporate entities because "legal rights of parent and subsidiary corporations are separate").  And, even if Plaintiff could somehow attribute the alleged actions of Audible to its parent, Plaintiff provides no basis for attributing liability to other subsidiaries, namely defendants Amazon.com LLC and AWS.  (Dkt. 13 ¶¶ 6, 10, 15.)

- 18 -

Thus, Plaintiff fails to plausibly allege vicarious or joint liability for the non-Audible defendants.  They should be dismissed.

**B.      The Court Should Transfer This Case to the District of New Jersey Because Venue Is Improper Here.**

Venue is not proper here over Audible.  Accordingly, pursuant to Fed. R. Civ. P. 12(b)(3), if this case is not dismissed in its entirety because the patents are invalid under § 101, then Audible respectfully moves to transfer this case to the District of New Jersey.

**1.      Legal Standards**

Venue in patent cases is governed by 28 U.S.C. § 1400(b), not the general venue statute, 28 U.S.C. § 1391(c).  *TC Heartland v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1518 (2017).  Section 1400(b) provides that "[a]ny civil action for patent infringement may be brought in the judicial district [1] where the defendant resides, or [2] where the defendant has committed acts of infringement and has a regular and established place of business."  A defendant "resides" in its state of incorporation only.  *TC Heartland*, 137 S. Ct. at 1520.  A "regular and established place of business" has three elements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."  *In re Cray Inc.*, 871 F.3d 1355, 1361 (Fed. Cir. 2017).  If any statutory requirement is not satisfied, venue is improper.  *Id.*

The plaintiff bears the burden to establish venue.  *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1012-13 (Fed. Cir. 2018).  When venue is improper, the court must dismiss the case or transfer it to a judicial district where jurisdiction and venue are proper.  28 U.S.C. § 1406(a).  The court "may consider both the complaint and evidence outside the complaint."  *Boston Sci. Corp. v. Cook Grp. Inc.*, 269 F. Supp. 3d 229, 234 (D. Del. 2017).

## 2.   Venue is Improper in this District.

Plaintiff concedes that Audible is incorporated in Delaware (Dkt. 13 ¶ 14) and, therefore, does not "reside" in this District.  Thus, to establish venue, Plaintiff must establish that Audible has a "regular and established place of business" in this district, i.e., a physical place in the district that constitutes a regular and established place of business *of Audible*.  Plaintiff fails to do so.  The only place of business *of Audible* that is identified in the complaint is Audible's headquarters in Newark, New Jersey.  (*Id.*)  Plaintiff cannot plead that Audible has a regular and established place of business in this District because Audible has none.  (Erni Decl. ¶ 3.)

The only physical place of business that plaintiff identifies in the complaint is "Amazon's" HQ2.  (Dkt. 13 ¶ 26.)  But plaintiff fails to show that HQ2 is a regular and established place of business *of Audible*.  It is not.  No Audible employees work at Amazon's HQ2.  (Erni Decl. ¶ 4.)

Plaintiff asserts that venue is proper "for the reasons set forth by the Court in its *Maglula* decision."  (Dkt. 13 ¶¶ 30-31.)  But Plaintiff ignores at least one critical fact about *Maglula*: neither Audible nor AWS were defendants.  The only defendants in that case were Amazon.com, Inc. and Amazon.com Services, Inc.  *Maglula, LTD. v. Amazon.com, Inc.*, No. 1:19-CV-1570, 2020 WL 9536937, at *1 (E.D. Va. Apr. 9, 2020).  Whether venue may have been proper in that case has no bearing on whether venue is proper over the defendants in this case.

Plaintiff also asserts that "Amazon" has "admitted that venue is proper in this District[,]" citing *Amazon.com, Inc. v. WDC Holdings LLC*, No. 1:20-cv-484, ECF No. 1, ¶ 26 (E.D. Va. Apr. 27, 2020).  But that case also did not involve AWS or Audible, and it was a non-patent case governed by the general venue statute rather than the patent-specific venue statute.  (*Id.*)  Thus, it has no bearing on the propriety of venue in this case.

Because venue is not proper over Audible, the case against Audible must be dismissed or, in the interest of justice, transferred to a judicial district where jurisdiction and venue are proper.

28 U.S.C. § 1406(a).

### 3.    The Court Should Transfer the Case to the District of New Jersey.

If the Court does not dismiss the entire case on the basis that the patents are invalid under § 101, then this Court should transfer the case to the District of New Jersey because venue is not proper in this district and the case could have been brought in New Jersey.  28 U.S.C. § 1406(a). A patent infringement action may be brought "in the judicial district . . . where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Although Audible denies any infringement, it does not dispute that it has sold the Accused Products in the District of New Jersey and that it has a regular and established place of business (e.g., its headquarters) there.  Thus, venue would be proper in the District of New Jersey.

Transferring the case to New Jersey would be in the interest of justice, as this case focuses on Audible's audiobook technology and Audible is headquartered there.  And, to the extent that the Court does not dismiss the non-Audible defendants, the claims against all defendants should be transferred to the District of New Jersey because litigating all claims in one action is in the interest of justice.  *Celsion Corp. v. Stearns Mgmt. Corp.*, No. CIV. CCB 00-1214, 2001 WL 55456, at *4 (D. Md. Jan. 18, 2001); *Trex Co. LLC v. Canton Lumber Co.*, No. CIV.A. 5:01CV00009, 2001 WL 543227, at *8 (W.D. Va. May 16, 2001).

### CONCLUSION

The Court should dismiss this case in its entirety because all asserted patents are invalid under 35 U.S.C. § 101.  Otherwise, for the reasons above, the Court should dismiss all claims against the defendants other than Audible and transfer the case to the District of New Jersey.

Respectfully submitted,

Dated: May 31, 2024      By: _/s/ Andrea L. Cheek_
                              Andrea L. Cheek
                              Virginia State Bar No. 80331
                              KNOBBE, MARTENS, OLSON & BEAR, LLP
                              1717 Pennsylvania Ave. N.W., Ste. 900
                              Washington D.C. 20006
                              andrea.cheek@knobbe.com
                              Tel: (202) 640-6400
                              Fax: (202) 640-6401

                              *Counsel for Defendants Amazon.com, Inc., Amazon.com
                              LLC, Amazon Web Services, Inc., and Audible, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 31, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send notification of such filing (NEF) to all counsel of record.

By: /s/ *Andrea L. Cheek*